1   **REESE RICHMAN LLP**
2   Kim E. Richman (admitted *pro hac vice*)
    krichman@reeserichman.com
3   Michael R. Reese (State Bar No. 206773)
4   mreese@reeserichman.com
    875 Avenue of the Americas, 18th Floor
5   New York, New York 10001
6   Telephone:   (212) 643-0500
    Facsimile:   (212) 253-4272
7   *Counsel for Plaintiff and the Proposed Class*

8

9

10

11

12

13              **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15

| | |
|---|---|
| 16  BERTHA CARDONA, on behalf of herself and all others similarly situated, | Case No. 2:12-cv-01148-GHK-SP |
| 18 | **PLAINTIFF BERTHA CARDONA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS TARGET CORPORATION AND HONEYTREE, INC.'S AMENDED MOTION TO DISMISS** |
| 19  Plaintiff, | |
| 20  v. | |
| 21  TARGET CORPORATION, HONEYTREE, INC., and DOES 1 through 10, | |
| 23 | Date: November 19, 2012 |
| 24 | Time: 9:30 a.m. |
| 25  Defendants. | Courtroom: 650 |
| 26 | Hon. George H. King |

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 1

II.   BACKGROUND .................................................................................. 2

III.  LEGAL STANDARD .......................................................................... 4

IV.   ARGUMENT ....................................................................................... 5

      A.   Plaintiff Has Standing under Article III of the Constitution ............... 5

      B.   Plaintiff's Claims Are Adequately Supported and Pled ...................... 8

           1. Plaintiff's Claims Are Pled With the Particularity
           Required by Federal Rule of Civil Procedure 9(b) ........................... 10

      C.   Plaintiff's Claims Are Not Preempted by Federal Law .................... 12

           1. The Statutory Framework Does Not Indicate Congress'
           Clear and Manifest Intent to Preempt State Standards of
           Identity Such as the CFAC ................................................... 14

           2. Even If the Common Name Requirement Applies,
           Plaintiff Seeks to Impose State Law Requirements That
           Are Identical to the Common Name Requirement and
           That Are Thus Not Preempted ................................................ 18

           3. Plaintiff's Claims Based on the Representation That the
           Products Are "Pure" Are Not Preempted Because the FDA
           Has Declined to Regulate the Term "Pure" ............................... 19

      D.   Inquiry into Whether the CFAC Violates the "Dormant"
           Commerce Clause Raises Factual Questions Not Properly
           Decided on a Motion to Dismiss ............................................ 20

      E.   *Cel-Tech*'s Safe Harbor Does Not Bar Plaintiff's UCL,
           FAL, and CLRA Claims ...................................................... 21

      F.   Plaintiff Has Alleged Affirmative Misrepresentations That
           Are Likely to Deceive a Reasonable Consumer ............................ 23

V.    CONCLUSION .................................................................................. 25

CERTIFICATE OF SERVICE ...................................................................... 26

i

1

# TABLE OF AUTHORITIES

2

CASES                                                                                               Page

3   *Altria Group, Inc. v. Good*,
4       555 U.S. 70 (2008) ................................................................................. 13

5   *Ashcroft v. Iqbal*,
        556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......................... 8
6
    *Askin v. Quaker Oats Co.*,
7       818 F. Supp. 2d 1081 (N.D. Ill. 2011) ....................................................... 7

8   *Astiana v. Ben & Jerry's Homemade, Inc.*,
        No. C 10-4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ............... 16
9
    *Bates v. Dow Agrosciences LLC*,
10      544 U.S. 431, 125 S. Ct. 1788, 161 L. Ed. 2d 687 (2005) ........................... 13

11  *Bell Atlantic Corp. v. Twombly*,
12      550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007) .................. 5

13  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
        20 Cal. 4th 163, 83 Cal. Rptr. 2d 548 (1999) ...................................... 22, 23
14
    *Chacanaca v. Quaker Oats Co.*,
15      752 F. Supp. 2d 1111, 1125 (N.D. Cal. 2010) .......................................... 6

16  *Chavez v. Blue Sky Natural Beverage Co.*,
17      268 F.R.D. 365 (N.D. Cal. 2010) .......................................................... 16

18  *Cipollone v. Liggett Group, Inc.*,
        505 U.S. 504, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992) ........................... 13
19
    *Close v. Glenwood Cemetery*,
20      107 U.S. 466, 2 S. Ct. 267, 27 L. Ed. 408 (1883) .................................... 22

21  *Degelmann v. Advanced Med. Optics, Inc.*,
22      659 F.3d 835, 839 (9th Cir. 2011) ........................................................... 5

23  *Desiano v. Warner–Lambert Co.*,
        326 F.3d 339 (2d Cir. 2003) .................................................................. 6
24
    *Guerrero v. Target Corp.*,
25      No. 12-21115-CIV, 2012 WL 3812324 (S.D. Fla. Sept. 4, 2012) ............. passim

26  *Holk v. Snapple Beverage Corp.*,
27      575 F.3d 329 (3d Cir. 2009) .............................................................. 13, 14

28

ii

*In re Farm Raised Salmon Cases,*
  175 P.3d 1170, 72 Cal. Rptr. 3d 112 (2008) .......................................14

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009).............................................10, 12

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) .........................4

*Koronthaly v. L'Oreal USA, Inc.,*
  374 F. App'x 257 (3d Cir. 2010)...........................................7, 8

*Kwikset Corp. v. Superior Court,*
  246 P.3d 877, 120 Cal. Rptr. 3d 741 (2011) ...........................................6

*Medley v. Johnson & Johnson Consumer Cos.,*
  No. 10-cv-02291-DMC-JAD, 2011 WL 159674, (D.N.J. Jan. 18, 2011)........6, 7

*Medtronic, Inc. v. Lohr,*
  518 U.S. 470, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996) ..........................14, 15

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.,*
  380 F.3d 1226, 1229 (9th Cir. 2004)........................................5

*Pike v. Bruce Church, Inc.,*
  397 U.S. 137, 90 S. Ct. 844, 25 L. Ed. 2d 174 (1970) ...................................22

*Red v. Kraft Foods, Inc.,*
  754 F. Supp. 2d 1137 (C.D. Cal. 2010)............................................14

*Reno v. Condon,*
  528 U.S. 141, 120 S. Ct. 666, 145 L. Ed. 2d 587 (2000) ................................22

*Swartz v. KPMG LLP,*
  476 F.3d 756 (9th Cir. 2007) ............................................... 10

*United States v. Bornscheuer,*
  563 F.3d 1228 (11th Cir. 2009).............................................17

*United States v. Marks,*
  530 F.3d 799, 810 (9th Cir. 2008).............................................4

*Vermont Pure Holdings, Ltd. v. Nestle Waters N. Am., Inc.,*
  No. CIV.A.03-11465 DPW, 2006 WL 839486
  (D. Mass. Mar. 28, 2006) ......................................15, 16, 19, 21

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003).............................................10, 12

*White v. Lee*,
  227 F.3d 1214, 1242 (9th Cir.2000) ...................................................................4

*Williams v. Gerber Products Co.*,
  552 F.3d 934, 938 (9th Cir. 2008) ............................................................5, 24

*Wyeth v. Levine*,
  555 U.S. 555, 129 S. Ct. 1187, 173 L. Ed. 2d 51 (2009) .................................14

**STATUTES AND OTHER AUTHORITIES**

21 C.F.R. § 102.5 .........................................................................................20

21 C.F.R. § 100.1 .........................................................................................19

21 U.S.C. § 341 ............................................................................................16

21 U.S.C. § 343 ............................................................................................17

21 U.S.C. § 343-1 .................................................................................15, 16

California Food and Agricultural Code § 29413 ..................................2, 23

California Food and Agricultural Code § 29611(c) ................................24

California Food and Agricultural Code § 29677 ......................................24

Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ..............3

Federal Rule of Civil Procedure 12(b)(1) ................................................4

Federal Rule of Civil Procedure 12(b)(6) ................................................4

Federal Rule of Civil Procedure 9(b) ...........................................9, 10, 12

Nutrition Labeling and Education Act of 1990, Pub. L. 101-535 (Nov. 8, 1990) ....3

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Bertha Cardona ("Plaintiff") respectfully submits this memorandum of law in opposition to the motion of defendants Target Corporation and HoneyTree, Inc. (collectively, "Defendants") to dismiss Plaintiff's Amended Complaint (Dkt. 25) ("Motion") and Defendants' Amended Memorandum in Support of the Motion (Dkt. 29) ("Def. Mem."). Defendants' Motion is without merit and must be denied.

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants have moved to dismiss Plaintiff's Amended Complaint under Rule 12(b)(1), Rule 12(b)(6), and Rule 9(b) of the Federal Rules of Civil Procedure. None of the arguments that Defendants cite in support of dismissal pass muster, however. In fact, the court in *Guerrero v. Target Corp.*, No. 12-21115-CIV, 2012 WL 3812324 (S.D. Fla. Sept. 4, 2012) has already addressed and rejected many of the arguments Defendant asserts in its Amended Memorandum.

First, Defendants' contention that Plaintiff lacks standing under Article III of the United States Constitution is wrong. Plaintiff's allegations that she suffered economic injury by purchasing a product that she would not have purchased absent Defendants' affirmative misrepresentations are sufficient to establish the injury-in-fact required for standing.

Second, contrary to Defendants' assertions otherwise, Plaintiff's Amended Complaint alleges sufficient facts in support of her claims to render her allegations plausible, and Plaintiff has pled her claims with the particularity required by Federal Rule of Civil Procedure 9(b).

Third, Plaintiff's claims are not preempted by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FFDCA"), as amended by the Nutrition Labeling and Education Act of 1990, Pub. L. 101-535 (Nov. 8, 1990) ("NLEA"), because they either seek to impose state law requirements that mirror federal requirements or they seek to impose state law requirements where no federal requirements exist. Specifically, as the *Guerrero* court has already decided, Plaintiff's

1

claims based on a state standard of identity for honey are not preempted because no federal standard of identity for honey exists.  This result is in accord with the plain language of the NLEA, which allows for state standards of identity.  Similarly, Plaintiff's claims based on Defendants' representation that the Products are "pure" are not preempted because the FDA has expressly declined to regulate the term "pure."

Fourth, the "dormant" Commerce Clause is not grounds for dismissal of Plaintiff's Amended Complaint at this stage of the litigation, in light of the lack of factual evidence before the Court as to whether any burden the CFAC may place on interstate commerce outweighs any local benefits it may confer.

Fifth, Defendants cannot avail themselves of any safe harbor. Defendants' conduct does not comply with applicable law, the CFAC. Additionally, the USDA standards for grades of honey, which have been repealed, require compliance with applicable state and federal law, and thus cannot serve as a shield from liability.

Finally, whether Defendants' representations that the Products are "honey" and/or "pure honey" are likely to deceive a reasonable consumer is a fact-intensive inquiry that cannot be resolved on a motion to dismiss.  Because Plaintiff has plausibly alleged that the representations "honey" and "pure honey" are likely to deceive a reasonable consumer into believing the Products contain pollen, when in fact they do not, Plaintiff has stated a claim under the UCL, FAL, and CLRA.

## II.    BACKGROUND

Defendants manufacture honey products that are labeled, marketed, and advertised as "honey" and/or "pure honey," even though they are completely free of pollen (the "Products").  Compl. ¶¶ 1, 2–5.[1]  One such Product is defendant Target Corporation's ("Target's") store brand "market pantry pure honey" ("Market Pantry Honey"), which is manufactured by defendant HoneyTree, Inc. ("HoneyTree").  *See*

---

[1] All paragraph references are to the Amended Complaint (Dkt. 16) unless otherwise noted.

¶¶ 1, 14, 15; Defendant Target Corporation's Rule 7.1 Corporate Disclosure Statement and Local Rule 7.1-1 Certification as to Interested Parties (Dkt. 6) ("Corporate Disclosure Statement") (disclosing that HoneyTree is "[m]anufacturer of Market Pantry Honey alleged in [Plaintiff's] Complaint"). The representations that the Products are "honey" and that certain Products, including Market Pantry Honey, are "pure honey" are central to the marketing of the Products and are displayed prominently on their packaging. ¶ 4.

Unfortunately for consumers, the Products are not pure honey; in fact, they are not even honey. Rather, the Products have been stripped of all pollen, which is a defining characteristic of honey under applicable law, the California Food and Agricultural Code ("CFAC"). ¶¶ 5–6. The CFAC defines honey as "the natural sweet substance produced by honeybees from the nectar of plants or from secretions of living parts of plants or excretions of plant sucking insects on the living parts of plants, which the bees collect, transform by combining with specific substances of their own, deposit, dehydrate, store, and leave in the honeycomb to ripen and mature." Cal. Food & Agric. Code § 29413(a). The CFAC further provides that "***no pollen or constituent particular to honey may be removed*** except where unavoidable in the removal of foreign inorganic or organic matter," *Id.* § 29413(e) (emphasis added), and honey "***shall not be … processed to such an extent that its essential composition is changed*** or its quality is impaired," *Id.* § 29413(f)(1) (emphasis added).

Honey experts have stated that the removal of all pollen is not necessary to remove other foreign matter from honey. Thus, the removal of *all pollen* from a product is *never unavoidable*, even in the removal of foreign inorganic or organic matter. ¶ 7; *see also* ¶ 20 (traditional filtering will leave pollen in place), ¶ 22 (elimination of all pollen is contrary to marketing highest quality product possible). Moreover, removal of all pollen significantly decreases the organoleptic and health qualities of the product, *see* ¶ 23("honey has been valued by millions for centuries for its flavor and nutritional value and that is precisely what is completely removed by the

3

1  [removal of all pollen]"), and renders it impossible to determine the product's origin,

2  *see, e.g.*, ¶ 18.

3      To stop Defendants' misleading practice, Plaintiff brings causes of action

4  against both Defendants for violation of California's False Advertising Law,

5  California Business and Professions Code § 17500 ("FAL"); and California's Unfair

6  Competition Law, California Business and Professions Code § 17200 *et seq.* ("UCL");

7  and for deceit and/or misrepresentation under the common law of California. In

8  addition, Plaintiff seeks injunctive relief against HoneyTree under the California

9  Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.* ("CLRA"), and

10  injunctive relief and damages under the CLRA against Target.[2]

11  **III.   LEGAL STANDARD**

12      Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move to

13  dismiss a complaint over which the court lacks subject matter jurisdiction. Fed. R.

14  Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction that "possess only

15  that power authorized by Constitution and statute, which is not to be expanded by

16  judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114

17  S. Ct. 1673, 128 L. Ed. 2d 391 (1994) (citations omitted). "The burden of establishing

18  federal jurisdiction is on the party invoking federal jurisdiction." *United States v.*

19  *Marks*, 530 F.3d 799, 810 (9th Cir. 2008). A challenge to standing under Article III

20  "pertain[s] to a federal court's subject-matter jurisdiction" and is therefore "properly

21  raised in a motion under Federal Rule of Civil Procedure 12(b)(1)." *White v. Lee*, 227

22  F.3d 1214, 1242 (9th Cir.2000).

23  —————————————————

24  [2] Plaintiff hereby withdraws her causes of action for violation of the Minnesota

25  Uniform Deceptive Trade Practices Act, Minnesota Statutes § 325D.43 *et seq.* and the
    Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws Ann. § 445.901 *et*

26  *seq.* and for breach of express warranty, breach of the implied warranty of
    merchantability, breach of the implied warranty of fitness for a particular purpose, and

27  unjust enrichment.

28

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all material factual allegations in the complaint and construe them in the light most favorable to the plaintiff.  *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1229 (9th Cir. 2004).

A district court should grant a motion to dismiss if the plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face."  *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)); *see also* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 ("[T]he motion [to dismiss] is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case.").

## IV.   ARGUMENT

### A.   Plaintiff Has Standing under Article III of the Constitution

The jurisdiction of federal courts is limited by Article III of the Constitution to cases or controversies in which the plaintiff has standing.  *Degelmann v. Advanced Med. Optics, Inc.*, 659 F.3d 835, 839 (9th Cir. 2011).  To satisfy the Article III standing requirement, Plaintiff bears the burden of demonstrating three elements: "(1) injury-in-fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

Claims that a plaintiff suffered financial injury by paying for a product that did not conform to the defendant's affirmative representations about the product are sufficient to create the injury-in-fact required for Article III standing.  *See Degelmann*,

5

659 F.3d at 838-40 (holding plaintiffs sufficiently pled injury-in-fact where they were "deceived into purchasing a [contact lens cleaning solution] that did not disinfect as well as it represented. Had the product been labeled accurately, they would not have been willing to pay as much for it as they did, or would have refused to purchase the product altogether.").

The California Supreme Court analyzed the economic harm suffered by a consumer who purchases a product based on misrepresentation in *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 120 Cal. Rptr. 3d 741 (2011). In that case, plaintiffs brought UCL and FAL claims based on a lock manufacturer labeling its product as "Made in the U.S.A." when in fact some parts were foreign made or involved foreign manufacture. *Kwikset Corp.*, 246 P.3d at 881. As the *Kwikset* court explained:

> For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately. This economic harm—the loss of real dollars from a consumer's pocket—is the same whether or not a court might objectively view the products as functionally equivalent.

*Id.*, 246 P.3d at 877, 120 Cal. Rptr. 3d at 741; *see also Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125 (N.D. Cal. 2010) ("The injury alleged here is the *purchase* of food products that contain an ingredient the plaintiffs find objectionable….").

Defendants rely on *Medley v. Johnson & Johnson Consumer Cos.*, No. 10-cv-02291-DMC-JAD, 2011 WL 159674 (D.N.J. Jan. 18, 2011) in support of their argument that Plaintiff has not pled an injury-in-fact. The court in *Medley*, however, explicitly distinguished the case at bar from a case that involved an alleged affirmative misrepresentation:

> It should be noted that Plaintiffs have not alleged economic injury on a theory that they paid a premium price for this brand of shampoo **based on Johnson & Johnson's misrepresentation of their product as being safe and non-toxic for children**, more so than comparable but less

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

expensive alternatives.  *See Desiano v. Warner–Lambert Co.*, 326 F.3d 339 (2d Cir. 2003).

*Medley*, 2011 WL 159674, at *2 n. 2 (emphasis added).

Here, Plaintiff has pled that, in spite of Defendants' affirmative representations that Market Pantry Honey is "honey" and "pure honey," Market Pantry is in fact neither.  ¶¶ 1–5.  Instead, "the Products have been stripped of all pollen, which is a defining characteristic of honey under applicable law."  *Id.*  Plaintiff alleges that "Defendants were able to induce consumers to purchase the Products when those consumers would not have purchased them absent Defendants' misleading statements." *Id.* ¶ 2; *see also id.* ¶ 13 (Plaintiff would not have purchased the Product had she known it "was not, in fact, 'pure honey' or even 'honey,' but, instead, had been filtered such that no pollen remained in the Product.").  Furthermore, Plaintiff has alleged that removal of all pollen significantly decreases the organoleptic and health qualities of the product, *see* ¶ 23("honey has been valued by millions for centuries for its flavor and nutritional value and that is precisely what is completely removed by the [removal of all pollen]"), and renders it impossible to determine the product's origin, *see, e.g.*, ¶ 18.

These allegations are sufficient to establish Article III standing.  *See Guerrero*, 2012 WL 3812324, at *3 ("Plaintiff argues that the honey she purchased did not confer the health benefits that she expected, the pollen-less honey was less valuable than honey with pollen, and that she would not have purchased the honey if she knew it did not contain pollen.  Thus, unlike the plaintiff in *Medley*, Plaintiff contends that the product she purchased was not what she expected.  Plaintiff has adequately plead an injury in fact." (citations omitted)).

Defendant's reliance on *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257 (3d Cir. 2010) is misplaced.  In *Koronthaly*, the plaintiff sued a lipstick manufacturer for failing to disclose the presence of lead in the lipstick.  *Koronthaly*, 374 F. App'x at 258.  Unlike the situation here, the plaintiff in *Koronthaly* did not and could not argue

7

that she was misled into purchasing the product because there were no affirmative misrepresentations on the product label.  *See Askin v. Quaker Oats Co.*, 818 F. Supp. 2d 1081, 1084 (N.D. Ill. 2011) (distinguishing *Koronthaly* in case based on misleading representations on food packaging on ground that "unlike Askin, Koronthaly could not argue that she paid a premium for the purchased product based on an affirmative misrepresentation that it was lead-free").  Here, in contrast to *Koronthaly*, the Amended Complaint alleges that Plaintiff paid for the Products based on representations that the Products were "pure honey" or "honey," when, in fact, the Products are not honey due to the complete absence of pollen.[3] [4]

## B.   Plaintiff's Claims Are Adequately Supported and Pled

Contrary to Defendants' arguments, Plaintiff's allegations are not only "merely consistent" with her accusations of wrongdoing—Plaintiff has pled facts demonstrating a plausible claim for relief.  *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" (internal quotation marks and citations omitted)).

Defendants argue that Plaintiff's lawyers commissioned testing of a sample of Target's Market Pantry Honey, but that Plaintiff "deftly avoids alleging … that she

---

[3] *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002) is similarly inapposite.  There again, plaintiffs did not plead that they purchased a product in reliance on an affirmative misrepresentation by the defendant, but rather that the defendant failed to warn plaintiffs of dangers plaintiffs subjectively considered important, even though the product worked as intended and did not physically harm plaintiffs.  *See Rivera*, 283 F.3d at 319.

[4] As discussed in Section III.B, Defendants' argument that Plaintiff lacks standing because she has not alleged "any facts connecting the honey [she] purchased to the honey tested by…her lawyers," Def. Mem. 7, is meritless because Plaintiff has alleged that her lawyers tested a sample of Market Pantry Honey that she purchased.  *See* ¶ 30.

tested the Market Pantry Honey she purchased….” Def. Mem. 9.  Defendants are wrong.  Plaintiff's Amended Complaint pleads that “[i]ndependent testing has confirmed that a sample of Market Pantry Honey ***purchased by Plaintiff*** is completely free of pollen.”  ¶ 30 (emphasis added).  At the motion to dismiss stage of the proceedings, all material facts alleged in Plaintiff's Amended Complaint must be accepted as true and construed in the light most favorable to the Plaintiff.  *See Nursing Home Pension Fund, Local 144*, 380 F.3d at 1229.  Accordingly, Plaintiff's allegation that her lawyers tested the very honey that she purchased must be accepted as true.

Defendants further argue that Plaintiff does not allege that she tested any of HoneyTree's honey.  Def. Mem. 9.  Defendant's argument falls short because Plaintiff has tested a sample of Target's Market Pantry Honey, and, as Target has revealed, HoneyTree is the “[m]anufacturer of Market Pantry Honey alleged in [Plaintiff's] Complaint.”  *See* Corporate Disclosure Statement.  By testing Target's Market Pantry Honey, Plaintiff necessarily tested HoneyTree honey.

Defendants next argue that Plaintiff “fails to allege any facts in support of her contention that the pollen in Target's Market Pantry Honey (including the bottle she purchased) is not ‘unavoidably removed.’”  Def. Mem. 9 (citing Cal. Food & Agric. Code § 29413(e)).  Again, Defendants' contention misses the mark.  The Amended Complaint provides multiple factual allegations in support of the proposition that “removal of *all pollen* from honey is *never unavoidable*.”  *See* ¶ 7; ¶ 20 (“According to FSN, most beekeepers say traditional filtering will catch bee parts, wax, and debris from the hives and other visible contaminants but will leave the pollen in place.”); ¶ 22 (“According to Mark Jensen, president of the American Honey Producers Association, removal of all pollen from honey ‘makes no sense’ and is completely contrary to marketing the highest quality product possible.”).

Thus, Plaintiff has pled facts sufficient to support her claims.

### 1.   **Plaintiff's Claims Are Pled With the Particularity Required by Federal Rule of Civil Procedure 9(b)**

In support of their argument that Plaintiff's Amended Complaint is not sufficiently pled, Defendants contend that Plaintiff's claims do not meet the heightened pleading standard required by Federal Rule of Civil Procedure 9(b). Def. Mem. 10–12. Rule 9(b) demands that the circumstances constituting alleged fraud "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal citations and quotations omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* (citing and quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Plaintiff's Amended Complaint more than adequately conforms to this standard.

**Who:** Defendants argue that "Plaintiff fails to differentiate between Target and HoneyTree," rendering Plaintiff's claims inadequate. Def. Mem. 10. But Plaintiff has alleged that Target owns and retails the Market Pantry brand and markets and sells Market Pantry Honey, *see* ¶ 14, while HoneyTree manufactures Target's Market Pantry Honey, as well as a variety of other honey products, *see* ¶ 15; *see also* Corporate Disclosure Statement. Plaintiff's allegations are that, as retailer and manufacturer of Market Pantry Honey, both Target and HoneyTree are responsible for misleadingly and deceptively labeling Market Pantry Honey as "honey" and/or "pure honey" when Market Pantry Honey is in fact pollenless. *See, e.g.,* ¶¶ 71–79 (alleging that both Defendants' violated the FAL). Further, Plaintiff alleges that Target is responsible for other products it retails, and HoneyTree is responsible for other products it manufactures, that are labeled as "honey" and/or "pure honey," even though they completely lack pollen. *See* ¶¶ 1, 14, 15. Thus, Plaintiff has "identif[ied] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Cf. Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (holding that complaint failed to comply with

Rule 9(b) where plaintiff did not state any factual basis for allegations that certain defendants acted in concert with, were agents of, or were co-conspirators with other defendants).

**What:** Defendants argue that "Plaintiff does not allege with particularity the products at issue." Def. Mem. 10. Defendants are wrong because Plaintiff has, at the very least, clearly alleged that Market Pantry Honey is one product at issue. ¶ 1. Plaintiff's Amended Complaint is not limited to Market Pantry Honey, however, but instead seeks to hold Target responsible for all Target brand products that are labeled "honey" and/or "pure honey" but that completely lack pollen, and to hold HoneyTree liable for all products manufactured by HoneyTree that are labeled as "honey" and/or "pure honey" but that completely lack pollen. *See* ¶¶ 1, 14, 15.

**Where and How:** Defendants further argue that Plaintiff "does not allege precisely the nature of the deceptive conduct." Def. Mem. 11. Plaintiff, however, has repeatedly alleged that Defendants misleadingly and deceptively labeled and marketed their Products as "honey" and/or "pure honey," when in fact the Products are void of pollen, in violation of the CFAC.[5]

In further support of their argument that Plaintiff has failed to plead the "where and how" of the misconduct alleged, Defendants recycle arguments already refuted above. *See* Def. Mem. 11 (arguing that Plaintiff's lawyers tested an "unidentified" sample of "*Target*'s Market Pantry Honey"). Plaintiff's Amended Complaint states that her lawyers tested honey that she purchased, ¶ 30, and that Target's Market Pantry Honey is also HoneyTree honey because HoneyTree manufactures it, ¶ 15. *See*

---

[5] Plaintiff does not claim that "Target's Market Pantry Honey (or any other honey) is improperly imported from China." *See* Def. Mem. 11. Rather, Plaintiff alleges that "without pollen there is no way to determine whether the honey came from legitimate and safe sources," *see* ¶ 21, and that there is a significant chance that pollenless honey may have originated in China, *see* ¶¶ 22–24. Plaintiff's Amended Complaint details some of the risks attendant to importation of Chinese honey, *see, e.g.*, ¶ 25 (Chinese honey has been found to be contaminated with chloramphenicol and other illegal animal antibiotics), to illustrate the importance of the presence of pollen in honey.

1   *also* Corporate Disclosure Statement.  Further, contrary to Defendant's contention
2   otherwise, Def. Mem. 11, Plaintiff does allege that the Products suffered from a
3   "quality defect" in that, absent pollen, the Products lacked "flavor and nutritional
4   value" that they otherwise would have had, ¶ 23, and that, absent pollen, it is
5   impossible to determine the Products' source, *see, e.g.*, ¶ 18.

6       Defendants' argument that Plaintiffs do not identify any specific
7   misrepresentations or specify when and where they occurred is also unfounded.  *See*
8   Def. Mem. 11–12.  Plaintiff has identified two specific representations — that the
9   Products are "honey" and/or "pure honey" — and has explained that these
10  representations occurred on the Product labeling and in marketing.  *See* ¶¶ 4–5.

11  ### C.    <u>Plaintiff's Claims Are Not Preempted by Federal Law</u>

12      The preemption doctrine is rooted in Article VI of the United States
13  Constitution, which states that the laws of the United States "shall be the supreme
14  Law of the Land; … any Thing in the Constitution or Laws of any State to the
15  Contrary notwithstanding."  U.S. Const., Art. VI, cl. 2.  "Under the Supremacy
16  Clause, federal law may be held to preempt state law where any of the three forms of
17  preemption doctrine may be properly applied: express preemption, field preemption,
18  and implied conflict preemption."  *Holk v. Snapple Beverage Corp.*, 575 F.3d 329,
19  334 (3d Cir. 2009) (citation omitted).  When conducting preemption analysis, the
20  federal courts are guided by the rule that "[t]he purpose of Congress is the ultimate
21  touchstone in every preemption case."  *Altria Group, Inc. v. Good*, 555 U.S. 70, 76
22  (2008).

23      Additionally, there is a presumption against preemption.  *Holk*, 575 F.3d at 334
24  (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S. Ct. 2608, 120 L.
25  Ed. 2d 407 (1992).  "In areas of traditional state regulation, [the federal courts]
26  assume that a federal statute has not supplanted state law unless Congress has made
27  such an intention clear and manifest."  *Bates v. Dow Agrosciences LLC*, 544 U.S. 431,
28  449, 125 S. Ct. 1788, 1801, 161 L. Ed. 2d 687 (2005) (internal quotation marks

1  omitted).  This requires that, if confronted with two plausible interpretations of a

2  statute, the courts "have a duty to accept the reading that disfavors pre-emption." *Id.*;

3  *see Wyeth v. Levine*, 555 U.S. 555, 565, 129 S. Ct. 1187, 1194-95, 173 L. Ed. 2d 51

4  (2009).  Such an "approach is consistent with both federalism concerns and the

5  historic primacy of state regulation of matters of health and safety." *Medtronic, Inc. v.*

6  *Lohr*, 518 U.S. 470, 485, 116 S. Ct. 2240, 2250, 135 L. Ed. 2d 700 (1996).[6]

7      The NLEA contains a provision expressly preempting certain types of state

8  labeling requirements, which is codified in 21 U.S.C. § 343-1(a).  "The NLEA's rule

9  of construction concerning the scope of preemption excludes implied preemption,

10  providing in relevant part that, '[t]he [NLEA] shall not be construed to preempt any

11  provision of State law, unless such provision is expressly preempted under [21 U.S.C.

12  § 343-1].'" *Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137, 1139 (C.D. Cal. 2010)

13  (citing Pub. L. No. 101–535, § 6(c)(1), 104 Stat. 2353, 2364); *see also In re Farm*

14  *Raised Salmon Cases*, 175 P.3d 1170, 1179, 72 Cal. Rptr. 3d 112, 122 (2008)

15  ("Congress made clear that the preemptive scope of section 343–1 was to sweep no

16  further than the plain language of the statute itself.").

17      Congress has directed and the FDA has recognized that "the only State

18  requirements that are subject to preemption are those that are affirmatively different

19  ***on matters that are covered by [§ 343-1] of the act***."  58 Fed. Reg. 2462 (1993)

20  (emphasis added); 60 Fed. Reg. 57054, 57120, 1995 WL 668939 (Nov. 13, 1995).

21

22

23

24

25

---

26  [6] "Health and safety issues have traditionally fallen within the province of state
   regulation.  This is true of the regulation of food and beverage labeling and branding."
27  *Guerrero*, 2012 WL 3812324, at *9 (citing and quoting *Holk*, 575 F.3d at 334).

28

13

1.   **The Statutory Framework Does Not Indicate Congress' Clear and Manifest Intent to Preempt State Standards of Identity Such as the CFAC**

The first question is whether any of the discrete provisions in Section 343-1(a) signal a "clear and manifest" intention by Congress to preempt state standards of identity for food such as the CFAC.  To determine Congress' intent, this Court must look primarily to "the language of the pre-emption statute and the 'statutory framework' surrounding it." *Medtronic, Inc.*, 518 U.S. at 486, 116 S. Ct at 2250–51, 135 L. Ed. 2d 700 (internal citation omitted).

Section 343-1(a) of the NLEA contains a provision relating to standards of identity for foods, which the FDA has the authority to promulgate under 21 U.S.C. § 341.  *See* 21 U.S.C. § 343-1(a)(1).  Under Section 343-1(a)(1), if the FDA has prescribed a standard of identity for a food, then a state cannot create a differing standard of identity:

> [N]o State or political subdivision of a State may directly or indirectly establish … any requirement for a food *which is the subject of a standard of identity established under section 341 of this title* that is not identical to such standard of identity or that is not identical to the requirement of section 343(g) of this title….

*Id.* (emphasis added).

The statutory language makes clear that Congress has given states the ability to create their own standards of identity for foods.  The language of Section 343-1(a)(1) expressly preempts only state standards of identity that differ from existing FDA standards of identity — it does not preempt any other state standards of identity.  *See Vermont Pure Holdings, Ltd. v. Nestle Waters N. Am., Inc.*, No. CIV.A.03-11465 DPW, 2006 WL 839486, at *5 (D. Mass. Mar. 28, 2006) ("*Vermont Pure*") ("The negative pregnant evident from a plain reading of [Section 343-1] is that states may establish requirements that are identical to FDA standards.").  While in Section 343-1(a) Congress could easily have preempted all state standards of identity (whether different from or identical to federal standards of identity), it did not.

Further, the language of Section 343-1(a) makes clear that express preemption of a state standard of identity does not occur unless the FDA has established its own, differing standard of identity.  The FDA and the courts recognize this.  *See, e.g.*, *Vermont Pure*, 2006 WL 839486, at *5 ("Section 343–1(a)(1) relates only to those state requirements for foods that are the 'subject of a standard of identity established under section 341 of this title.'").  As the FDA has explained, "Section [343-1(a)(1)] of the [NLEA] only effects preemption with respect to matters on which a Federal requirement exists. ***If there is no Federal requirement to be given preemptive effect, preemption does not occur.***"  60 Fed. Reg. 57,076, 57,120, 1995 WL 668939 (Nov. 13, 1995) (emphasis added); *see also Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 WL 2111796, at *8 (N.D. Cal. May 26, 2011); *Vermont Pure*, 2006 WL 839486, at *9; *Guerrero*, 2012 WL 3812324, at *10 ("[U]nder the NLEA, 'the only State requirements that are subject to preemption are those that are affirmatively different from Federal requirements.'" (citing *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 372 (N.D. Cal. 2010)).

According to Defendants, if the FDA has not adopted a standard of identity for a food pursuant to Section 341, then the provisions in 21 U.S.C. § 343(i), which provide that food is misbranded unless the label bears the common or usual name of the food, are triggered.  Def. Mem. 14.  Defendants argue that "[b]ecause the FDA has not adopted a standard of identity for honey…, NLEA provides not only that honey *may* be labeled according to its common or usual name, but also that honey is misbranded in violation of federal if *not* labeled according to its common or usual name."  *Id.*

Defendants are wrong.  Under Defendants' reading of Sections 341, 343, and 343-1, no state could ever establish a standard of identity governing, for example, what name must appear on the label of a particular type of food and under what circumstances such name may appear, where no FDA standard of identity exists.

The statutory framework does not **clearly and manifestly** evidence a Congressional intent to prevent states from promulgating their own standards of identity for food, in the absence of an FDA standard of identity. If Congress had intended to do so, it could have easily enacted clearer and more direct language to that effect. It could have provided that a state may not create a requirement unless a Federal requirement exists, and only then if the state requirement was identical. Instead, Congress left room for state requirements.

Furthermore, the plain language of Section 343(i) contradicts Defendants' interpretation of the statute. Section 343(i)'s heading provides that it applies to a "[l]abel where [there is] no representation as to definition and standard of identity," and nothing in the remainder of Section 343(i) indicates otherwise. *See* 21 U.S.C. § 343(i). By contrast, Section 343(g) explicitly provides that it applies where a food "purports to be or is represented as a food **for which a definition and standard of identity has been prescribed by regulations as provided by section 341 of this title**…." (emphasis added). Congress could have chosen to draft Section 343(i) such that its requirements were always triggered in the absence of a federal standard of identity promulgated pursuant to Section 341, using language similar to the language in Section 343(g), but it did not. Instead, Congress enacted Section 343(i) such that, by its plain language, it only applies in the absence of both a federal **and** a state standard of identity. *See Guerrero*, 2012 WL 3812324, at *10 n. 16 ("Section 343(g) states that it only applies to federal standards of identity enacted under 21 U.S.C. § 341 while 343(i) contains no similar limitation. Accordingly, the Court must give effect to this distinction." (citing *United States v. Bornscheuer*, 563 F.3d 1228, 1237 (11th Cir. 2009) ("It is our duty to give effect, if possible to every clause and word of a statute"))).[7]

_____

[7] Other courts that have considered whether the NLEA preempts the CFAC took for granted that Section 343(i) was triggered in the absence of a federal standard of

Here, a state standard of identity, the CFAC, exists.  Therefore, under a plain reading of Section 343(i), the common name requirement is not triggered, and Section 343-1(a)(3)'s preemption provision is not invoked.  *See Guerrero*, 2012 WL 3812324, at *10 ("Here, the Florida Honey Standard does not conflict because there is no federal standard of identity for honey.  The Court does not find any conflict between this conclusion and 21 U.S.C. § 343-1(a)(3) because, if a state has prescribed a standard of identity for a food product, the provisions of 21 U.S.C. § 343(i)(1) are not triggered.").

The cases Defendants cite, *Young v. Johnson & Johnson*, No. 11-4580 (JAP), 2012 WL 1372286 (D.N.J. Apr. 19, 2012) and *In re Pepsico Inc.*, 588 F. Supp. 2d 527 (S.D.N.Y. 2008), are distinguishable.  Both *Young* and *In re Pepsico Inc.* involved situations where plaintiffs attempted to use state law requirements that were not identical to existing federal requirements.  Here, because no federal standard of identity for honey exists, there is no basis for preempting a state standard of identity such as the CFAC.

In sum, the NLEA's statutory framework surrounding its preemption provisions does not demonstrate a clear and manifest intent to preempt state standards of identity

---

identity because the plaintiffs in those cases did not argue otherwise.  For example, in *Strobridge v. Safeway Inc.*, No. RG12-611078 (Cal. Super. Ct. Aug. 6, 2012), which dealt with factual circumstances very similar to the case before the Court, the California Superior Court for the County of Alameda made explicit that "the parties [did] not dispute" that Section 343(i)(1) applied even in the absence of a federal standard of identity for honey.  *See Strobridge* at 3.  Similarly, in *Brod v. Sioux Honey Association Cooperative*, No. C-12-1322 EMC, 2012 WL 3987516 (N.D. Cal. Sept. 11, 2012), the United States District Court for the Northern District of California does not appear to have considered the possibility that Section 343(i) is only triggered in the absence of ***both*** a state standard of identity and a federal standard of identity, in spite of the plain statutory language, which indicates that this is the case.  *See Brod*, 2012 WL 3987516, at *8 ("Section 343(i) applies to foods that are not otherwise subject to specific ***regulatory*** definitions." (emphasis added)).

17

such as the CFAC.  At the very least, two plausible interpretations of the statute exist, triggering the Court's duty to reject preemption.

> ### 2. **Even If the Common Name Requirement Applies, Plaintiff Seeks to Impose State Law Requirements That Are Identical to the Common Name Requirement and That Are Thus Not Preempted**

Section 343-1(a)(3) only preempts state law requirements that are "not identical to" Section 343(i)'s common name requirement and its accompanying regulations. The FDA has explained that:

> "Not identical to" does not refer to the specific words in the requirement but instead means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container, that:
>
> (i) Are not imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the act; or
>
> (ii) Differ from those specifically imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the act.

21 C.F.R. § 100.1(c)(4); *see also* 60 Fed. Reg. at 57,120 ("the only State requirements that are subject to preemption are those that are affirmatively different from the Federal requirements…."); *Vermont Pure*, 2006 WL 839486, at *5 ("The term 'identical,' does not refer to the specific words used in the state requirement, but to the direct and indirect effects of the requirement.").

The FDA's common name regulation provides that the common name of a food must disclose the presence *or absence* of material components:

> (c) The common or usual name of a food *shall include a statement of the presence or absence of any characterizing ingredient(s) or component(s)*…when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or

component(s) is present when it is not, and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food.

21 C.F.R. § 102.5(c) (emphasis added).[8]

Plaintiff has alleged that presence of pollen is a "defining characteristic" of honey.  ¶ 5.  Thus, Plaintiff alleges that it is deceptive and misleading for Defendants to label the Products as "honey" and/or "pure honey," given that the Products are pollenless.   Plaintiff seeks to enforce state law requirements identical to federal requirements by prohibiting Defendants from misleadingly labeling the Products as "honey" and/or "pure honey" without an accompanying disclosure of the absence of a "material" or "characterizing" component (*i.e.*, pollen) — for example, "contains no pollen," "does not contain pollen," "filtered to remove all pollen," or some other similar disclosure.  *See* 21 C.F.R. § 102.5(c)(1).  Consequently, even if Section 343(i) and its implementing regulations apply to honey, Plaintiff's state law claims are not preempted because Plaintiff seeks to impose state law requirements that are identical to those federal requirements.

> **3.     Plaintiff's Claims Based on the Representation That the Products Are "Pure" Are Not Preempted Because the FDA Has Declined to Regulate the Term "Pure"**

In addition to claiming that the Products are misleadingly labeled as "honey," Plaintiff alleges that Market Pantry Honey and other Products are misleadingly labeled "pure honey," when they are in fact not "pure honey" due to the total absence of pollen.  ¶¶ 1–5.  Plaintiff's claims based on Defendants' representation that the

---

[8] Section 102.5(c)(1) goes on to require that "[t]he presence or absence of a characterizing ingredient or component shall be declared by the words "containing (or contains) ___" or "containing (or contains) no ___" or "no ___" or "does not contain ___", with the blank being filled in with the common or usual name of the ingredient or component."

Products are "pure" are not preempted because Plaintiff seeks to enforce state law requirements respecting a term that the FDA has expressly declined to regulate.

As discussed above in Section III.C, Section 343-1 of the NLEA does not preempt state law requirements where no federal requirements exist. 60 Fed. Reg. at 57,120 ("*If there is no Federal requirement to be given preemptive effect, preemption does not occur.*" (emphasis added)).

The FDA has repeatedly discouraged the use of the term "pure" in product labeling because it is ambiguous and may be misleading, and the FDA has expressly declined to regulate the term. *See* 58 Fed. Reg. 2,897, 2,903 (Jan. 6, 1993) (stating that "[t]he agency advises that while there is no specific prohibition against the use of the term[] 'pure'…, it has discouraged the use of [the] term[] because [it is] ambiguous and may be misleading"; declining to regulate); 60 Fed. Reg. at 57,099 (same); *see also Vermont Pure*, 2006 WL 839486, at *8 ("[T]he FDA expressly declined to 'use its resources to define the term 'pure,'' a term central to Plaintiff's…claims." (quoting 60 Fed. Reg. at 57,099)).

Because no federal requirements exist with respect to the use of the term "pure" on the labeling of honey and honey-like products, there are no federal requirements to be given preemptive effect.   Therefore, Plaintiff's state law claims related to Defendants' misleading use of the term "pure" are not preempted.

**D.**   **Inquiry into Whether the CFAC Violates the "Dormant" Commerce Clause Raises Factual Questions Not Properly Decided on a Motion to Dismiss**

Defendants argue that Plaintiff's claims violate the negative implications of the Commerce Clause, U.S. Const. art. 1, § 8, cl. 3, because the CFAC, while non-discriminatory, allegedly imposes an "enormous" burden on interstate commerce in relation to any local benefits, because it would "Balkanize the product labeling rules for honey, with one set of label rules that apply in California and another for everywhere else."   Def. Mem. 15–16; *see Pike v. Bruce Church, Inc.*, 397 U.S. 137,

142, 90 S. Ct. 844, 847, 25 L. Ed. 2d 174 (1970) ("Where the [state] statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.")

There is a "time-honored presumption" that "[e]very legislative act is to be presumed to be a constitutional exercise of legislative power until the contrary is clearly established." *Reno v. Condon*, 528 U.S. 141, 148, 120 S. Ct. 666, 145 L. Ed. 2d 587 (2000); *Close v. Glenwood Cemetery*, 107 U.S. 466, 475, 2 S. Ct. 267, 27 L. Ed. 408 (1883). Defendants have not provided any evidence for their conclusory allegation that the CFAC would place an "enormous" burden on honey manufacturers and retailers. Nor is there evidence before the Court with respect to the state interests that the CFAC advances and protects. Defendants' argument is, at best, premature at this stage of the proceedings. *See Guerrero*, 2012 WL 3812324, at *11 ("Any putative effect on Defendant of the Florida Honey Standard is clearly outside the four corners of the Complaint and may require a factual inquiry by the Court.").

E.   **_Cel-Tech_'s Safe Harbor Does Not Bar Plaintiff's UCL, FAL, and CLRA Claims**

Defendants argue that Plaintiff's UCL, FAL, and CLRA claims must be dismissed because Defendants' conduct is allegedly expressly permitted by other law and is thus shielded by a "safe harbor" from liability. Def. Mem. 16–17 (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 182, 83 Cal. Rptr. 2d 548, 562 (1999)). Specifically, Defendants argue that their conduct is shielded by such a legislative "safe harbor" because it allegedly complies with USDA standards for grades of honey and with the CFAC.

Defendants are wrong. First, the USDA standards for grades of honey, which were completely voluntary when in effect, have been repealed and thus do not constitute legislation that can provide a basis for a "safe harbor." As the United States District Court for the Southern District of Florida recently explained:

21

In 1995, the USDA removed "most of the voluntary U.S. grade standards and other selected regulations covering a number of agricultural commodities (dairy products)" from the Code of Federal Regulations ("CFR").  60 Fed. Reg. 62,172 (Dec. 4, 1995).  The United States Standards for Grades of Extracted Honey were among the voluntary standards removed from the CFR.  *Id.* (removing from CFR "52.1391-1420 Subpart—United States Standards for Grades of Extracted Honey").  Given that the U.S. grade standards for honey were removed from the CFR, the Court doubts whether they can serve as "[a]n act or practice required or specifically permitted by federal or state law."

*Guerrero*, 2012 WL 3812324, at *7.[9]

More importantly, even if the USDA standards for grades of honey were in effect, they explicitly state that "[c]ompliance with the provisions of these standards shall not excuse failure to comply with the provisions of the Federal Food, Drug and Cosmetic Act, or with applicable State laws and regulations."  United States Standards of Extracted Honey, 50 Fed. Reg. 15,861.

Second, while Plaintiff agrees that *Cel-Tech* provides a "safe harbor" for a defendant that has complied with applicable law, Plaintiff has alleged that Defendants' conduct does not comply with the CFAC.  Specifically, California Food and Agricultural Code § 29413(e) provides that "no pollen or constituent particular to honey may be removed except where unavoidable in the removal of foreign inorganic or organic matter."  As Plaintiff has alleged, "[h]oney experts have stated that the removal of all pollen is not necessary to remove other foreign matter from honey. Thus, the removal of *all pollen* from a product is *never unavoidable*, even in the

_____

[9] Defendants argue that California Food and Agricultural Code § 29611(c) requires honey sold in California to be marked with the applicable USDA grade.  Def. Mem. 17.  However, the language of Section 29611(c) refers to United States grades that "are established" for honey by the USDA.  Since 1995, no grades for honey have been "established" by the USDA, as those sections of the CFR have been repealed, meaning that Section 29611(c), by its terms, does not require honey products sold in California to be labeled with one of the USDA grades.

1  removal of foreign inorganic or organic matter." ¶ 7; *see also* ¶¶ 20, 22.  By removing

2  all pollen from the Products, Defendants have violated the CFAC.

3     In spite of Defendants' argument to the contrary, Def. Mem. 17, California

4  Food and Agricultural Code § 29611(c)'s requirement that honey be labeled "pollen

5  added" if pollen is added to the honey says nothing about whether a honey-like

6  product that has had all of its pollen removed is correctly labeled as "honey" or "pure

7  honey."  Defendants' compliance with Section 29611(c), therefore, is irrelevant to

8  whether the Products are mislabeled as "honey" and/or "pure honey."[10]

9     Plaintiff does not disagree that a safe harbor protects a defendant if it *has*

10  *followed* applicable regulations.  But this misses the point.  Plaintiff's Amended

11  Complaint alleges that Defendants *did not follow* applicable regulations, since they

12  misleadingly labeled their Products as "honey" and/or "pure honey" when, in fact, the

13  Products were not "honey" under the CFAC because they were completely void of

14  pollen, which Plaintiff alleges had not been unavoidably removed.

15  **F.    Plaintiff Has Alleged Affirmative Misrepresentations That Are**
    **Likely to Deceive a Reasonable Consumer**

16

17     Plaintiff's UCL, FAL, and CLRA claims are governed by the "reasonable

18  consumer" test.  *See Williams*, 552 F.3d at 938.  Under this standard, Plaintiff must

19  "show that members of the public are likely to be deceived" by the representations at

20  issue.  *Id.* at 938.  "The California Supreme Court has recognized that these laws

21  prohibit not only advertising which is false, but also advertising which, although true,

22  _____

23  [10]  Similarly, California Food and Agricultural Code § 29677, which deals with

24  adulteration of honey, says nothing about whether a pollenless honey product may

25  properly be labeled as "honey" or "pure honey."  Defendants' reading of Section
    29677(b), Def. Mem. 17, would render mislabeled all honey products labeled "honey"

26  alone that include any amount of pollen, an absurd result, since under Defendants'

27  reading pollen is not a component of honey under any circumstance, but is rather an
    adulterant.

28

23

1    is either actually misleading or which has a capacity, likelihood or tendency to deceive
2    or confuse the public." *Id.* (internal citations and quotations omitted).  While it is true
3    that the primary evidence in a false advertising case is the advertising itself, California
4    courts "have recognized that whether a business practice is deceptive will usually be a
5    question of fact not appropriate for decision on demurrer." *Id.*  When inquiring as to
6    whether reasonable consumers would be deceived, it is a "rare situation in which
7    granting a motion to dismiss is appropriate." *Id.* at 939.

8         Reasonable consumers do not expect that a product labeled "honey" will be
9    completely free of pollen.  As the CFAC establishes, pollen is a defining characteristic
10   of honey that may not be removed unless removal is unavoidable.  *See* Cal. Food &
11   Agric. Code § 29413(e).  Plaintiff has alleged the removal of *all pollen* from is never
12   unavoidable.  Further, Plaintiff has alleged that pollen confers flavor and nutritional
13   benefits, as well as providing benefits in terms of determining the geographic origins
14   of honey.  Consequently, Plaintiff has, at the very least, raised questions of fact not
15   properly decided on a motion to dismiss as to whether Defendants' "honey"
16   representation is deceptive.

17        Moreover, reasonable consumers do not expect that a product labeled "pure
18   honey" will be pollenless.  The word "pure" implies that the Product is untainted, un-
19   weakened, unmitigated honey, and not something else.  *See* http://www.merriam-
20   webster.com/dictionary/pure.  As the FDA has acknowledged, the word "pure" on a
21   product label is ambiguous and may be misleading.  *See* 58 Fed. Reg. 2,897, 2,903
22   (Jan. 6, 1993).  Again, Plaintiff has, at the very least, raised questions of fact as to
23   whether Defendants' representation that the Products are "pure" would deceive a
24   reasonable consumer that cannot be resolved at this stage.

25        Accordingly, Plaintiff has stated actionable claims under the UCL, the FAL,
26   and the CLRA.

27

28

                                        24

## V.    **CONCLUSION**

For all of the foregoing reasons, Defendants' motion to dismiss is without merit and must be denied.[11]

Dated: October 16, 2012

**REESE RICHMAN LLP**

 /s/ Kim E. Richman

Kim E. Richman (admitted *pro hac vice*)
Michael R. Reese (State Bar No. 206773)
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone:   (212) 643-0500
Facsimile:   (212) 253-4272
Email:        krichman@reeserichman.com
              mreese@reeserichman.com
*Counsel for Plaintiff and Proposed Class*

---

[11] If the Court does not deny Defendants' Motion in its entirety, Plaintiff respectfully requests leave to amend her complaint to cure any deficiencies identified by the Court. *See, e.g.*, Fed. R. Civ. P. 15(a); *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999) ("leave should be liberally granted").

1

**<u>CERTIFICATE OF SERVICE</u>**

2          I, Kim E. Richman, hereby certify that on October 16, 2012, I caused the

3    foregoing to be filed electronically through the CM/ECF system, which caused all

4    CM/ECF participants to be served by electronic means.

5

6    Dated: October 16, 2012                          /s/ Kim E. Richman

7                                                      Kim E. Richman

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28