E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1148-GHK (SPx) | Date | March 20, 2013 |
|---|---|---|---|
| Title | *Bertha Cardona v. Target Corp., et al.* | | |

**Presiding: The Honorable** **GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE**

| Beatrice Herrera | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **(In Chambers) Order re:** Defendants' Motion to Dismiss (Dkt. No. 25)

This matter is before us on Defendants Target Corporation and Honeytree, Inc.'s ("Defendants") Motion to Dismiss ("Motion"). We have considered the arguments in support of and in opposition to the Motion and consider this matter appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows.

## I. Background

On February 9, 2012, Plaintiff filed this putative class action against Defendant Target Corporation ("Target"). On June 4, 2012, in response to Target's Motion to Dismiss the Class Action Complaint, Plaintiff filed a First Amended Class Action Complaint ("FACAC") pursuant to Federal Rules of Civil Procedure 15(a), adding Honeytree, Inc. ("Honeytree") as a Defendant. The FACAC alleges that Target retails and Honeytree manufactures honey products, including the product marketed as "Market Pantry Honey" ("Honey Product"), that are misleadingly marketed as "honey" and/or "pure honey" even though these products "are not even honey" because they "have been stripped of all pollen, which is a defining characteristic of honey under applicable law." (FACAC ¶¶ 1, 5). Plaintiff alleges that Defendants made the misleading statements that the honey products are "honey" to induce consumers to purchase the products "when those consumers would not have purchased them absent Defendants' misleading statements," and that "Defendants conveyed their misleading message through a significant marketing campaign on the packaging of the Products and various websites, including the website for Market Pantry Honey and Defendant HoneyTree's website." (FACAC ¶ 3).

Plaintiff alleges that honey without pollen is not honey because California law provides that "no pollen or constituent particular to honey may be removed except where unavoidable in the removal of foreign inorganic or organic matter," Cal. Food & Agric. Code § 29413(e), and that "honey shall not be heated or processed to such an extent that its essential composition is changed or its quality is impaired." § 29413(f). Plaintiff alleges that according to honey experts such as Mark Jensen, the president of the American Honey Producers Association, "the removal of all pollen from a product is

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1148-GHK (SPx) | Date | March 20, 2013 |
|---|---|---|---|
| Title | *Bertha Cardona v. Target Corp., et al.* | | |

never unavoidable, even in the removal of foreign inorganic or organic matter." (FACAC ¶¶ 7, 22-23). Plaintiff alleges that according to recent testing commissioned by the Food Safety News ("FSN"), a "Web-based newspaper dedicated to reporting on issues surrounding food safety" – Defendant "HoneyTree's 'honey' products, including 'Disney's Pure Clover Honey' and Target's Market Pantry Honey . . . are completely stripped of pollen." (*Id.* ¶ 8). Plaintiff alleges that stripping honey of pollen makes it impossible to identify the source of the honey, which allows honey from unsafe sources, such as China, to be sold on the U.S. market. (*Id.* ¶ 18).

Plaintiff alleges that she "bought a 12 ounce bottle of Market Pantry Honey in January 2011 for around $3 at a Target store located in Redlands, California," and that she "relied upon the statements that the Product was 'pure honey' and was 'honey' in deciding to purchase the Product." (*Id.* ¶ 13). She further alleges that had she "known at the time that the Product was not, in fact, 'pure honey' or even 'honey,' but instead, had been filtered such that no pollen remained in the Product, she would not have purchased the Product." (*Id.*). She alleges that "[i]ndependent testing [by Plaintiff's counsel] has confirmed that a sample of Market Pantry Honey purchased by Plaintiff is completely free of pollen." (*Id.* ¶¶ 8, 30).

Based on these allegations, Plaintiff asserts the following 11 causes of action: (1) violation of the Minnesota Uniform Deceptive Trade Practices Act ("UDTPA"); (2) violation of the California Consumers Legal Remedies Act ("CLRA") against HoneyTree; (3) violation of the CLRA against Target; (4) false advertising in violation of Cal. Bus. & Prof. Code § 17500; (5) unfair competition in violation of Cal. Bus. & Prof. Code § 17200; (6) breach of express warranty; (7) breach of implied warranty of merchantability; (8) breach of implied warranty of fitness for a particular purpose; (9) deceit and/or misrepresentation; (10) unjust enrichment; and (11) violation of Michigan Consumer Protection Act. In her Opposition, Plaintiff withdraws her claims for violation of Minnesota UDTPA and Michigan Consumer Protection Act, and her unjust enrichment and various breach of warranty claims. Thus, the following 5 causes of action remain: (1) violation of the CLRA against HoneyTree; (2) violation of the CLRA against Target; (3) false advertising in violation of Cal. Bus. & Prof. Code § 17500; (4) unfair competition in violation of Cal. Bus. & Prof. Code § 17200; and (5) deceit and/or misrepresentation. Each of Plaintiff's remaining claims depends on her allegation that Defendants' Honey Products are misleadingly or deceptively labeled as "honey" or "pure honey" even though the Products are "not even honey" because they are pollenless.

## II. Motion to Dismiss Pursuant to FRCP 12(b)(1)

"Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). "To satisfy the case or controversy requirement of Article III, which is the "irreducible constitutional minimum" of standing, a plaintiff must, generally speaking, demonstrate that he has suffered injury in fact, that the injury is fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (internal quotations omitted). Although evidence is to be viewed and

CV-90 (06/04) **CIVIL MINUTES - GENERAL** Page 2 of 16

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1148-GHK (SPx) | Date | March 20, 2013 |
|---|---|---|---|
| Title | *Bertha Cardona v. Target Corp., et al.* | | |

inferences are to be drawn in Plaintiff's favor (as the nonmoving party), Plaintiffs have the burden of proving that they have standing to sue under Article III. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (stating that "[t]he party invoking federal jurisdiction bears the burden of establishing [the] elements [of constitutional standing]").

Here, Defendants argue that the FACAC should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiff fails to establish the injury-in-fact[1] requirement of standing. Specifically, relying on *Medley v. Johnson & Johnson Consumer Co.*, 2011 WL 159674, at *2 (D.N.J. Jan. 18, 2011), Defendants argue that Plaintiff "cannot allege an 'injury in fact' merely by claiming that the honey she purchased was composed of something different from what she expected," (Mot. 7-8), when she does not allege "that she got something that was defective or inedible," "that the honey was without value or there would have been a difference in price," "nor that she suffered an adverse effects from consuming the honey she purchased," (Mot. 8). We disagree.

In an action asserting false or misleading labeling, a plaintiff sufficiently alleges injury in fact by alleging that (1) the label includes certain representations; (2) the representations are false; (3) the plaintiff saw and relied on the labels for their truth in purchasing the product; and (4) the plaintiff would not have bought the product otherwise. *Brod v. Sioux Honey Ass'n*, ---F. Suppp. 2d---, 2012 WL 3987516, at *6 (N.D. Cal. 2012) (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) (in an action alleging that the defendant had "falsely marketed and sold locksets labeled as 'Made in U.S.A.' that in fact contained foreign-made parts or involved foreign manufacture," concluding that the complaint sufficiently alleged injury in fact by alleging that "(1) Kwikset labeled certain locksets with "Made in U.S.A." or a similar designation, (2) these representations were false, (3) plaintiffs saw and relied on the labels for their truth in purchasing Kwikset's locksets, and (4) plaintiffs would not have bought the locksets otherwise.")); *see also Guerrero v. Target Corp.*, ---F. Supp. 2d---, 2012 WL 3812324, at *2-3 (S.D. Fla. Sept. 4, 2012) (concluding that the plaintiff had sufficiently alleged injury-in-fact, where she alleged that the honey she bought lacked an essential element of honey under Florida law, "that the honey she purchased did not confer the health benefits that she expected, that the pollen-less honey was less valuable than honey with pollen, and that she would not have purchased the honey if she knew it did not contain pollen").

Here, the Plaintiff alleges that Defendants have affirmatively represented that Defendant's Honey Product is "honey" and "pure honey" even though Plaintiff contends that without pollen, Defendants' Honey Product is neither. (FACAC ¶¶ 1-5). She "relied upon the statements that the Product was 'pure honey' and was 'honey' in deciding to purchase the Product." (*Id.* ¶ 13). Had she "known at the time that the Product was not, in fact, 'pure honey' or even 'honey,' but instead, had been filtered such that no pollen remained in the Product, she would not have purchased the Product." (*Id.*).

[1] Defendants initially also argue that Plaintiff fails to establish causation, given that she does not allege that her counsel tested the Market Pantry Honey that she purchased. However, as Plaintiff points out in her Opposition, this is incorrect, given that she specifically alleges in her FACAC that "[i]ndependent testing [by Plaintiff's counsel] has confirmed that a sample of Market Pantry Honey purchased by Plaintiff is completely free of pollen." (*Id.* ¶¶ 8, 30).

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1148-GHK (SPx) | Date | March 20, 2013 |
|---|---|---|---|
| Title | *Bertha Cardona v. Target Corp., et al.* | | |

Moreover, the removal of pollen removes its "flavor and nutritional value," (*id.* ¶ 23), suggesting that she obtained a product that had fewer health benefits and/or less value than she was expecting. Together, these allegations sufficiently allege an injury-in-fact.

Relying on *Medley*, Defendants argue that these allegations are insufficient to allege an economic injury. In *Medley*, the plaintiff purchased shampoo that allegedly contained a toxic chemical, methyl chloride. 2011 WL 159674, at *2. The court there concluded that the plaintiff failed to establish economic injury because "the economic injury for which Plaintiffs seek[] redress is the price Plaintiffs paid for shampoo, which they then apparently used in bathing their children, without adverse health reactions. Whatever injury they claim to have suffered due to their subsequent discovery of methyl chloride in the shampoo could not, therefore, have been economic." *Id.* The court reasoned that

> [H]ad Plaintiffs known about the alleged toxicity of the shampoo prior to using the product they would either have returned it unopened, or not purchased it in the first place. Once the product had been consumed, however, there was no economic injury for Plaintiffs to complain of, and the fear of future injury is legally insufficient to confer standing. Plaintiffs received the benefit of their bargain so long as there were no adverse health consequences, and the product worked as intended, meaning that the hair of Plaintiff's children was cleansed, and their eyes and skin were not irritated.

*Id.*

Given that the purpose of labeling is to provide information to the consumers at the point of purchase, however, we decline to follow the *Medley* approach, which measures injury after consumption. Instead, we agree with the *Brod* and *Kwikset* approach, which measures the relevant injury at the point of purchase, i.e., whether the plaintiff relied on the representation in the labeling in making the purchase and whether she would have made the purchase had the representations been different. Accordingly, we reject Defendant's argument and conclude that Plaintiff has sufficiently alleged an injury in fact.

## III. Motion to Dismiss Pursuant to FRCP 12(b)(6)

To survive a motion to dismiss for failure to state a claim, a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Although the Court must accept the allegations of the Complaint as true and construe them in the light most favorable to Plaintiff in resolving this Motion, the Court need not accept as true legal conclusions "cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

Defendants argue that the Complaint should be dismissed under FRCP 12(b)(6) on the following grounds: (1) her claims fail because they are preempted by the Nutrition Labeling and Education Act of 1990 ("NLEA"); (2) her claims should be dismissed under the dormant commerce clause; (3) her claims fail because they lack factual sufficiency; (4) her UCL, CLRA, and FAL claims fail because

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 4 of 16

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1148-GHK (SPx) | Date | March 20, 2013 |
|---|---|---|---|
| Title | *Bertha Cardona v. Target Corp., et al.* | | |

Defendants' conduct complied with USDA standards and relevant California law, such that the "safe harbor" doctrine applies; and (5) her UCL, CLRA, and FAL claims fail because the purportedly misleading statements are not likely to deceive a reasonable consumer.

**A. Federal Preemption**

The Supremacy Clause of the Constitution empowers Congress to make laws that preempt state law. *Von Saher v. Norton Simon Museum of Art in Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010). "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir.2010).

Here, the relevant California law defines "honey" as "the natural sweet substance produced by honeybees from the nectar of plants or from secretions of living parts of plants or excretions of plant sucking insects on the living parts of plants, which the bees collect, transform by combining with specific substances of their own, deposit, dehydrate, store, and leave in the honeycomb to ripen and mature." Cal. Food & Agric. Code § 29413(a). Further, § 29413(e) prohibits the removal of pollen, "except where unavoidable in the removal of foreign inorganic or organic matter," from honey, and § 29671 prohibits the sale of honey product "which is marked, labeled, or designated as honey . . . in any container . . . which does not conform to the provisions of this Chapter." Based on these provisions, Plaintiff asserts that Defendants' labeling of their pollenless honey product as "honey" or "pure honey" is false or misleading under California law. Thus, the issue is whether the express preemption provision of the Nutrition Labeling and Education Act of 1990 ("NLEA"), which amended the Food, Drug, and Cosmetic Act ("FDCA"), preempts Plaintiff's state law claims. The FDCA vests the FDA with the authority to "protect the public health by ensuring that . . . foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A). In 1990, Congress enacted the NLEA, 21 U.S.C. § 343-1, to "establish uniform national standards for the nutritional claims and the required nutrient information displayed on food labels." 1990 U.S.C.C.A.N. 3336, 3342.

Under § 343-1(a) of the NLEA,

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce—
>
> (1) any requirement for a food which is the subject of a standard of identity established under section 341 of this title that is not identical to such standard of identity or that is not identical to[2] the requirement of section 343(g) of this title, except that this paragraph

[2] The term "not identical to" is defined by 21 C.F.R. § 100.1(c)(4):

> "Not identical to" does not refer to the specific words in the requirement but instead means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 5 of 16

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1148-GHK (SPx) | Date | March 20, 2013 |
|---|---|---|---|
| Title | *Bertha Cardona v. Target Corp., et al.* | | |

does not apply to a standard of identity of a State or political subdivision of a State for maple syrup that is of the type required by sections 341 and 343(g) of this title, [or]. . . .

(3) any requirement for the labeling of food of the type required by section 343(b), 343(d), 343(f), 343(h), 343(i)(1), or 343(k) of this title that is not identical to the requirement of such section, except that this paragraph does not apply to a requirement of a State or political subdivision of a State that is of the type required by section 343(h)(1) of this title and that is applicable to maple syrup[.]

Here, the Parties do not dispute that there is no federal standard of identity for honey, and thus, § 343-1(a)(1) does not apply. However, Defendants argue that Plaintiff's state law claims are expressly preempted by § 343-1(a)(3) because requiring Defendants' product to be labeled as anything other than "honey" imposes a different labeling requirement than what is required under § 343(i)(1).

Section 343(i)(1) sets forth the "common name" labeling requirement. Specifically, it provides that

A food shall be deemed to be misbranded–

. . . .

(i) Label where no representation as to definition and standard of identity

Unless its label bears (1) the common or usual name of the food, if any there be, and (2) in case it is fabricated from two or more ingredients, the common or usual name of each such ingredient and if the food purports to be a beverage containing vegetable or fruit juice . . . .

Defendants argue that because honey's common name is "honey," regardless of the presence of pollen, § 343(i)(1) requires them to label their honey product as "honey," given that "honey is misbranded in violation of federal law if *not* labeled according to its common or usual name." (Mot. 14). Thus, Defendants argue that to the extent California law "prohibit[s] honey from being labeled 'honey' unless it meets other criteria not imposed by federal law," i.e., unless some detectable amount of pollen remains in the final product, such law is preempted by § 343(i)(1) because it is "not identical to," or is different from, the requirements under § 343(i)(1). Accordingly, the preemption inquiry is three-fold: (1) whether the common name requirement under § 343(i)(1) applies; (2) if so, whether the state

---

container, that:
(i) Are not imposed by or contained in the applicable provision (including any implementing regulation) of [21 U.S.C. §§ 341, 343] of the act; or

(ii) Differ from those specifically imposed by or contained in the applicable provision (including any implementing regulation) of section [21 U.S.C § 341, 343] of the act.

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 6 of 16

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1148-GHK (SPx) | Date | March 20, 2013 |
|---|---|---|---|
| Title | *Bertha Cardona v. Target Corp., et al.* | | |

law requirements are "identical to" the requirements under § 343(i)(1); and (3) if not, whether there are any other aspects of Plaintiff's claims that are not preempted by § 343(i)(1).

**1. Whether § 343(i)(1) Applies**

Plaintiff argues that the common name labeling requirement under § 343(i)(1) does not apply for two reasons. First, § 343(i)(1) is not triggered because Cal. Food & Agric. Code § 29413 (a) and (e) creates a state standard of identity, and § 343(i)(1) only applies when there is *no* standard of identity, state or federal. Alternatively, she argues, in her Supplemental Brief, that § 343(i)(1) does not preempt Cal. Food & Agric. Code § 29413 because they impose different "types" of requirements. We address each argument in turn.

**a. Whether § 343(i)(1) Is Triggered**

Plaintiff argues that § 343(i)(1) is not triggered for two reasons. First, while § 343-1(a)(1) could have easily prohibited all state standards of identity, it merely prohibits states from establishing standards of identity that differ from existing federal standards. Because "Congress could easily have preempted all state standards of identity," (Opp'n 14), its decision not to do so "left room for state requirements." (*Id.* 16). Second, because Congress specifically referred to § 341 – the subsection that authorizes the Secretary to establish standards of identity, standards of quality, and standards of fill of container for food products – in § 343(g), which specifically limits the "standard of identity" as it appears in subsection (g) to federal standards, the absence of a similar reference to § 341 in § 343(i) means that the "standard of identity" in subsection (i) should not be limited to federal standards. Plaintiff argues that because "standard of identity" in subsection (i) refers to both federal and state standards, the common name requirement only applies when there is neither state or federal standards. *See Guerrero v. Target Corp.*, --- F. Supp. 2d ---, 2012 WL 3812324, at *1 (S.D. Fla. 2012).

Having reviewed the relevant sections of the NLEA, we are not convinced by Plaintiff's arguments. First, the lack of reference to § 341 in §343(i), relative to both subsections (g) and (h), is explained by the content of the subsections.[3] Whereas subsections (g) and (h) refer to § 341 because the

[3] The relevant subsections of § 343 are reproduced below for comparison:

A food shall be deemed to be misbranded –

. . . .

(g) Representation as to definition and standard of identity

If it purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations as provided by section 341 of this title, unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients (other than spices, flavoring, and coloring) present in such food.

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 7 of 16

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1148-GHK (SPx) | Date | March 20, 2013 |
|---|---|---|---|
| Title | *Bertha Cardona v. Target Corp., et al.* | | |

substance of these subsections refers to standard of identity, quality, and fill container, the substance of subsection (i) does not refer to standard of identity. Therefore, there is no need for subsection (i) to specifically reference § 341 within its body. Second, the only reference of "standard of identity" appears in the subtitle of subsection (i), and this subtitle reference parallels the reference to "standard of identity" in subsection (g). Under settled rules of statutory interpretation, "[w]e interpret identical phrases used in the same statute to bear the same meaning." *United States v. Maciel-Alcala*, 612 F.3d 1092, 1098 (9th Cir. 2010); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995) ("[W]e adhere to the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." (internal quotation marks omitted)). "In addition, the close proximity of two statutory provisions presents a classic case for application of the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Maciel-Alcala*, 612 F.3d at 1098 (internal quotations omitted). Here, both subsections (g) and (i) of § 343 use the phrase "standard of identity" in their subtitles. Thus, under the "normal rule of statutory construction," we interpret these identical phrases to have the same meaning, i.e., as referring to the federal standard of identity under § 341. This interpretation is bolstered by the fact that no part of § 341 ever refers to any state standards of identity, making it more improbable that the same phrase would have different meaning when used in subsections placed so close together.

Finally, we conclude that this interpretation of "standard of identity" within the meaning of § 343(i) is consistent with the statutory purpose of NLEA to "establish uniform national standards for the nutritional claims and the required nutrient information displayed on food labels."[4] 1990

---

(h) Representation as to standards of quality and fill of container

If it purports to be or is represented as –

> (1) a food for which a standard of quality has been prescribed by regulations as provided by section 341 of this title, and its quality falls below such standard, unless its label bears, in such manner and form as such regulations specify, a statement that it falls below such standard[.]

. . . .
(i) Label where no representation as to definition and standard of identity

Unless its label bears (1) the common or usual name of the food, if any there be . . . .

[4] In promulgating regulations pursuant to the NLEA, the FDA sets forth the "three basic objectives" of the NLEA as follows:

> (1) To make available nutrition information that can assist consumers in selecting foods that can lead to healthier diets, (2) to eliminate consumer confusion by establishing definitions for nutrient content claims that are consistent with the terms defined by the Secretary, and (3) to encourage product innovation through the development and

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 8 of 16

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1148-GHK (SPx) | Date | March 20, 2013 |
|---|---|---|---|
| Title | *Bertha Cardona v. Target Corp., et al.* | | |

U.S.C.C.A.N. 3336, 3342. Consistent with the goal of furthering uniformity to reduce consumer confusion, the NLEA prescribes certain labeling requirements – i.e., the common name requirement – even for food product for which the FDA has not prescribed any standards of identity under § 341. Indeed, the FDA itself has expressly acknowledged that NLEA's goal of uniformity may at times result in the loss of consumer protection from more stringent State laws. 58 Fed. Reg. 2462, 2463 ("[I]n certain circumstances, the net benefits from national uniformity in these aspects of the food label outweigh the loss in consumer protection that may occur as a result.").

Accordingly, we conclude that the "standard of identity" in § 343(i) refers to only federal standards of identity. Thus, the common name labeling requirement applies in this case because the FDA has not prescribed a federal standard of identity for honey.

**b. Whether § 343(i)(1) impose the same "type" of requirement as Cal. Food & Agric. Code § 29413**

Plaintiff also argues that the common name requirement under § 343(i)(1) does not preempt Cal. Food & Agric. Code ("CFAC") § 29413, which sets forth the California State Honey Standard, because they impose different "types" of requirements. (Supp. Resp. 3). Specifically, because the California State Honey Standard "establishes 'the entire compositional requirements' for honey and the common name requirement does not," § 343(i)(1) sets forth a different "type" of requirement and therefore cannot preempt the California State Honey Standard. (*Id.* at 4 (quoting 38 Fed. Reg. 6,964, at 6,964 (Mar. 14, 1973) ("The Commissioner [of the FDA] concludes that standards of identity . . . will continue to be promulgated, where there is a need to prescribe the entire compositional requirements for a food, in addition to the name of the food.")). Plaintiff argues that this interpretation is supported by the following FDA response to a question regarding "whether a State standard of identity, quality, or fill is preempted if it is for a food for which there are no Federal standards":

> Under [§ 341-1(a)(1)] of the act, a State may not establish or continue in effect a standard of identity, quality, or fill for a food that is the subject of a standard of identity under section 401 of the act (21 U.S.C. § 341) that is not identical to the Federal standard. If there is no Federal standard of identity, quality, or fill for a particular food, then there is no basis, under the terms of [§ 341-1(a)(1)] of the act, for finding that there is Federal preemption. By contrast, under [§ 341-1(a)(2)] through [§ 341-1(a)(5)] a State may not establish or continue in effect any requirement "of the type" set forth in the sections of the act specified in [§ 341-1(a)(2)] through [§ 341-1(a)(5)]. Thus, State or local requirements can be preempted under [§ 341-1(a)(2)] through [§ 341-1(a)(5)] even if no analogous Federal regulation had been promulgated.

58 Fed. Reg. 2462, 2463. According to Plaintiff, because there is no federal standard of identity, and because Cal. Food & Agric. Code § 29413 sets forth a state standard of identity, which is a different "type" of requirement than the common name requirement under 21 U.S.C. § 343(i)(1), Cal. Food & Agric. Code § 29413 is not preempted.

marketing of nutritionally improved foods.

CV-90 (06/04) **CIVIL MINUTES - GENERAL** Page 9 of 16

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1148-GHK (SPx) | Date | March 20, 2013 |
|---|---|---|---|
| Title | *Bertha Cardona v. Target Corp., et al.* | | |

We agree that standards of identity and the common name requirements regulate different aspects of food products: the former defines a food product and sets forth its compositional requirements, *see e.g.*, 21 C.F.R. 135.110 (defining "ice cream and frozen custard" and setting forth, *inter alia*, its requisite "milkfat-to-nonfat milk solids levels"), while the latter is merely a labeling requirement. However, this is precisely why, to the extent Cal. Food & Agric. Code § 29671 deems honey product mislabeled as honey if it does not conform to Cal Food & Agric. Code § 29413, such a *state labeling* requirement is preempted by § 343(i)(1), a *federal labeling* requirement. This interpretation is supported by the FDA's view that while states can continue to effect standards of identity where there are no federal standards, states may not effect requirements of the type set forth in, *inter alia*, § 341-1(a)(3),[5] including the *labeling requirement* under § 343(i)(1), which requires a food product for which there is no federal standard of identity to be labeled by its common or usual name. In other words, while California may set forth the compositional requirements of honey, as it does under § 29413(f), it cannot set forth *labeling* requirements that are not "identical to" the federal labeling requirement.

This result is consistent with the FDA's express acknowledgment "that some stringent State laws will be preempted by less restrictive Federal regulations . . . . [because] one of the goals of the 1990 amendments is national uniformity in certain aspects of food labeling, so that the food industry can market its products efficiently in all 50 States in a cost-effective manner." 58 Fed. Reg. 2462, 2463. Thus, "in certain circumstances, the net benefits from national uniformity in these aspects of the food label outweigh the loss in consumer protection that may occur as a result." *Id.*

Accordingly, we conclude that here, because there is no federal standard of identity for honey, Defendants' Honey Product must be labeled by its "common or usual name" under § 343(i)(1).

### 2. Whether State Law Requirements Are "Identical to" the Requirements under § 343(i)(1)

Plaintiff argues that even if § 343(i)(1) applies, the labeling required under California law – which, according to Plaintiff, requires honey without pollen to include disclosures such as "contains no pollen" or "filtered to remove all pollen"– is "identical to" the requirements under § 343(i)(1). In particular, Plaintiff argues that because FDA's common name regulation requires the disclosure of "the presence or absence of any characterizing ingredient(s) or component(s)," 21 C.F.R. 102.5(c), and she has alleged that the presence of pollen is a "defining characteristic of honey," (Compl. ¶ 5), the state law labeling requirements are "identical to" the common name requirements under § 343(i)(1).

21 C.F.R.§ 102.5 provides:

[5] As discussed above, the FDA has stated that "a State may not establish or continue in effect any requirement "of the type" set forth in the sections of the act specified in section [§ 341-1(a)(2)] through [§ 341-1(a)(5)]." 58 Fed. Reg. 2462, 2463. Under § 341-1(a)(3), states may not impose any labeling requirements not identical to, *inter alia*, § 343(i)(1).

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1148-GHK (SPx) | Date | March 20, 2013 |
|---|---|---|---|
| Title | *Bertha Cardona v. Target Corp., et al.* | | |

> (a) The common or usual name of a food, which may be a coined term, shall accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients . . . .
>
> (b) The common or usual name of a food shall include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case . . . .
>
> (c) The common or usual name of a food shall include a statement of the presence or absence of any characterizing ingredient(s) or component(s) and/or the need for the user to add any characterizing ingredient(s) or component(s) when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present when it is not, and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food. . . . .
>
> (d) A common or usual name of a food may be established by common usage or by establishment of a regulation in subpart B of this part, in part 104 of this chapter, in a standard of identity, or in other regulations in this chapter.

Thus, under 21 C.F.R. § 102.5(c), the "common or usual name" of a food requires disclosure of the presence or absence of a "characterizing ingredient" if the ingredient meets the following requirements: (1) it has a material bearing on price or consumer acceptance *or* when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient is present when it is not; *and* (2) consumers may otherwise be misled about the presence or absence of the ingredient in the food.

In this case, we read the second requirement, the "otherwise misled" requirement, as creating a threshold requirement that consumers must generally understand the term "honey" to mean "honey with pollen" before pollen can be considered a "characterizing ingredient" under § 102.5(c). This interpretation makes sense because absent the expectation that "honey" means "honey with pollen" – i.e., if consumers generally have no expectation about whether honey should or should not contain pollen – the presence or absence of pollen could not have a bearing on the price they are willing to pay for a product labeled "honey" or on their acceptance of a product labeled "honey." Disclosure of ingredients on food labels meaningfully furthers the purposes of NLEA only if it is "a necessary device for comparative food shopping." *Cf. Am. Frozen Food Inst. v. Mathews*, 413 F. Supp. 548, (D.D.C. 1976) (concluding that the FDA had not exceeded its statutory authority in promulgating regulations which require the disclosure of "percentage of ingredients for seafood cocktails" because "[v]irtually all of the consumer response [from the rulemaking process] indicated express approval of disclosure of percentage of ingredients for seafood cocktails as a necessary device for comparative food shopping").

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1148-GHK (SPx) | Date | March 20, 2013 |
|---|---|---|---|
| Title | *Bertha Cardona v. Target Corp., et al.* | | |

Here, we conclude that Plaintiff cannot plausibly allege a widespread consumer expectation or understanding that "honey" means "honey with pollen" because she has made no showing that demand for honey with pollen is anything but a relatively recent phenomenon.  Plaintiff herself acknowledges that the web-based Food Safety Network article, on which her Complaint is largely based, is "recent," making it unlikely that it has changed the consumers' expectation of what constitutes honey on a widespread basis.  Plaintiff's Opposition and Supplemental Brief offer no indication that she can plausibly allege that nationwide, consumers have come to expect "honey" to mean "honey with pollen."

Instead, as Defendant points out, "[t]he common usage of 'honey' to mean the product of bees, irrespective of pollen, is evident from a variety of sources both lay and legal."  *See* Cal. Food & Agric. Code § 29413(a) (defining "honey" as "the natural sweet substance produced by honeybees from the nectar of plants or from secretions of living parts of plants or excretions of plant sucking insects on the living parts of plants, which the bees collect, transform by combining with specific substances of their own, deposit, dehydrate, store, and leave in the honeycomb to ripen and mature); Webster's New World Dictionary (3d Coll. Ed. 1988) (Victoria Neufeldt, et al., ed., 1981) ("honey n.1 : a thick, sweet, syrupy substance that bees make as food from the nectar of flowers and store in honeycombs"); Random House Webster's College Dictionary (2d ed. 2001) ("honey n.1 : a sweet viscid fluid produced by bees from the nectar collected from flowers and stored in nests or hives as food"); and Merriam-Webster Online Dictionary, www.m-w.com ("honey n.1a : a sweet viscid material elaborated out of the nectar of flowers in the honey sac of various bees").

Indeed, all courts that have reached the "common or usual name" issue have uniformly concluded that the common or usual name of pollenless honey is honey."  *See Ross v. Sioux Honey Ass'n*, 2013 WL 146367, at *11 (N.D. Cal. Jan. 14, 2013) (concluding that the "common or usual name" of pollenless honey is "honey," given that no statutory definitions of honey compiled from "states throughout this nation" defined honey by its pollen content); *Overton v. CVS Caremark Corp.*, SACV 12-0982 DOC (ANx), at 12 n.10, 13-14 (C.D. Cal. Dec. 11, 2012) (relying on the statements from the National Honey Board, a "federal research and promotion board under USDA oversight that conducts research, marketing and promotion programs to help maintain and expand markets for honey and honey products," to conclude that pollenless honey is still honey); *Regan v. Sioux Honey Ass'n Co-op*, --- F. Supp. 2d ---, 2013 WL 395127 (E.D. Wis. 2013) (finding that "[p]ollen is not a 'characterizing ingredient or component' because, as the Court already explained, honey is honey, even in the absence of pollen").

Thus, we conclude that Plaintiff cannot plausibly allege that "pollen" is a "characterizing ingredient" of "honey," and that the "common and usual name" of honey is honey, irrespective of pollen content.

Plaintiff's Supplemental Brief makes the following additional arguments for why the state law requirements are consistent with the federal common or usual name requirement.  First, Plaintiff argues that the plain language of 21 C.F.R. § 102.5(d) suggests that "the California State Honey Standard *can provide* the appropriate 'common or usual name'" for Defendants' honey product.  Specifically, Plaintiff argues that the use of the permissive "may" under § 102.5(d) indicates that the list of sources that may

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1148-GHK (SPx) | Date | March 20, 2013 |
|---|---|---|---|
| Title | *Bertha Cardona v. Target Corp., et al.* | | |

establish common usage is not exhaustive. This argument is unconvincing. A plain reading of § 102.5(d) shows that a common or usual name "may be established by common usage or by [*the FDA's*] establishment of a regulation in subpart B of this part, in part 104 of this chapter, in a standard of identity, or in other regulations in this chapter." In other words, this subsection provides that a common or usual name may be established by common usage in the industry *or by the FDA through regulation*. There is no room for state standards of identity in this list.

Second, Plaintiff argues that inasmuch as the courts in *Overton* and *Regan* have relied on the opinions of the National Honey Board in finding that the common or usual name of pollenless honey is honey, such opinion should not be "dispositive of the question of what the proper name for Defendants' pollenless product is," given that the perspective of the National Honey Board is "skewed toward protecting the honey industry and increasing the sale of honey and honey products, not protecting the interests of consumers." (Supp. Resp. 8). This argument misses the mark because industry opinion, whether representing consumer interest or not, is relevant to the establishing of a common or usual name for a product. *See FDA's Letter to Various Seafood Trade Ass'ns Regarding the Labeling of Catfish*, 2003 WL 24014315, at *1 (Feb. 28, 2003) (accepting "some alternate market names" for catfish "after consultation with importers and domestic distributors," but not consumers); *FDA's Guide to Acceptable Market Names for Seafood Sold in Interstate Commerce*, 2009 WL 1887394, *5 (Jan. 2009) (allowing members of the industry to "coin a new descriptive name provided that it is not misleading or confusing").

Third, Plaintiff argues that even if state law cannot be a source of honey's "common and usual name" under § 102.5(d), pollen is a "characterizing ingredient" of honey under § 102.5(c) because "several states other than California have enacted honey standards establishing that pollen is a characterizing component of honey." (Supp. Resp. 9). As we explained above, however, pollen is a "characterizing ingredient" of honey only if consumers have generally come to understand "honey" to mean "honey with pollen." Thus, the fact that Plaintiff can only identify 3 states (California, Nebraska, and Florida) that have expressly prohibited the unnecessary removal of pollens is actually further evidence that consumers in the United States (as Plaintiff seeks to represent a nationwide class) do not generally understand "honey" to mean "honey with pollen."

Relatedly, Plaintiff also argues that "many state honey statutes . . . actually suggest that pollen *is* a characterizing component of honey by defining honey as 'the natural product of the honeybee.'" (Supp. Resp. 10 n.11 (citing, e.g., Ala. Code. § 2-11-120 ("The terms 'honey,' 'liquid or extracted honey,' 'strained honey' or 'pure honey' as used in this article, shall mean the nectar of plants that has been transformed by, and is the natural product of the honeybee, either in the honeycomb or taken from the honeycomb and marketed in a liquid, crystalized or granulated condition."); Conn. Gen. Stat. § 21a-24(a) ("As used in this section, 'honey' means the natural product of the honey bee taken from the nectar of flowers, transformed by such bee, taken from the honeycomb and marketed in a liquid, candied or granulated condition."); Okla. Stat. Ann. Tit. 78 § 81 ("The term 'honey,' 'liquid or extracted honey,' 'strained honey' or 'pure honey' as used in this act, shall mean the nectar of plants or flowers that has been transformed by, and is the natural product of the honeybee, either in the honeycomb or taken from the honeycomb and marketed in a liquid, candied or granulated condition."). After reviewing each of

CV-90 (06/04) **CIVIL MINUTES - GENERAL** Page 13 of 16

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1148-GHK (SPx) | Date | March 20, 2013 |
|---|---|---|---|
| Title | *Bertha Cardona v. Target Corp., et al.* | | |

the definitions cited by Plaintiff, however, we fail to see how the phrase "the natural product of the honeybee" specifically suggests that "pollen" is a "characterizing ingredient" of honey within the meaning of 21 C.F.R. § 102.5, and Plaintiff's papers offer no convincing arguments demonstrating otherwise.

Finally, Plaintiff argues that "the plain language of the California State Honey Standard directly supports the proposition that pollen is a 'characterizing component' of honey." (Supp. Resp. 9). This argument is likewise unconvincing. Under Cal. Food & Agric. Code § 29413(a), honey is defined as "the natural sweet substance produced by honeybees from the nectar of plants or from secretions of living parts of plants or excretions of plant sucking insects on the living parts of plants, which the bees collect, transform by combining with specific substances of their own, deposit, dehydrate, store, and leave in the honeycomb to ripen and mature." Nowhere in this definition is "pollen" identified as a characterizing ingredient, or an essential element, of honey. Instead, Plaintiff argues that "secretions of living parts of plants" refers to pollen. Not only is this argument unsupported by any authority or sources, but it also leads to an incoherent result, given that it would define honey as "the natural sweet substance produced by honeybees . . . from [pollens]." Because it is physically impossible to produce honey from pollen, Plaintiff's argument makes little sense.

Relatedly, Plaintiff also argues that § 29413(e),[6] a non-definitional provision of § 29413, supports the interpretation that pollen is a characterizing ingredient because the statute juxtaposes pollen with the phrase "constituent particular to honey," implying that pollen is an example of a "constituent particular to honey." Whether an ingredient is "particular to honey," however, is a different issue from whether it is a "characterizing ingredient" under the relevant federal regulation. As we discussed at length above, a "characterizing ingredient" under 21 C.F.R. § 102.5(c) has a particular meaning, i.e., that it is an ingredient that has a material bearing on price or consumer acceptance, and consumers would otherwise be misled about its absence or presence absent adequate labeling. There is neither textual nor caselaw support for Plaintiff's proposition that the California legislature intended to incorporate this specific meaning of characterizing ingredient under 21 C.F.R. § 102.5(c) into the phrase "constituent particular to honey" under § 29413(e). Thus, we reject Plaintiff's argument that a "constituent particular to honey" is equivalent to a "characterizing ingredient."

Accordingly, after carefully considering each of Plaintiff's arguments, we conclude the "common and usual name" of honey is honey, irrespective of pollen content. Accordingly, the

[6] § 29413(e) provides:

> Honey sold as described in subdivision (d) shall not have added to it any food ingredient, including food additives, nor shall any other additions be made other than honey. Honey shall not have any objectionable matter, flavor, aroma, or taint absorbed from foreign matter during its processing and storage. Honey shall not have begun to ferment or effervesce and no pollen or constituent particular to honey may be removed except where unavoidable in the removal of foreign inorganic or organic matter.

requirement that pollen-less honey be labeled as "(without pollen)" is not "identical to" the "common and usual name" requirement under 21 U.S.C. § 343(i)(1), and is therefore preempted by § 343-1(a)(3).

### 3. Whether Plaintiff's Claims Based on the Representation That the Products Are "Pure" Are Preempted

Finally, Plaintiff devotes one paragraph in her Opposition, without further discussion in her Supplemental Brief, to argue summarily that her claims are not preempted to the extent they are based on Defendants' representation of their product as "pure." Citing FDA comments relating to spring water and diluted fruit juice, Plaintiff argues that the FDA had expressly declined the invitation to regulate the term "pure," and thus, her claims based on Defendants' misleading use of the term "pure" are not preempted. (Opp'n 20).

In light of Plaintiff's repeated assertions throughout her Complaint that pollen-less honey is "not pure honey" because it is "not even honey," (FACAC. ¶¶ 5, 26, 29, 30), we conclude that under Plaintiff's theory, Defendants' Honey Products are not "pure honey" for the same reason that they are not "honey," – i.e., because they contain no pollen. (*See id.* ¶ 29 ("For example, the labeling of Market Pantry Honey as 'pure' and as 'honey' explicitly represents that Market Pantry Honey is honey, even though it is not.")). Thus, Defendants' use of the term "pure" does not form a separate basis for Plaintiff's claims, which are preempted by the NLEA as discussed above.

Even if Defendants' use of the term "pure" does form a separate basis of Plaintiff's claims, we conclude that she cannot plausibly allege that Defendant's Honey Products are not "pure." The FDA comments cited by Plaintiff suggests that the term "pure" has the potential to be misleading because it denotes the absence of mixture, and thus, when a juice manufacturer declares its product as "100 percent pure," such claims could "mislead the consumer into believing that the product is 100 percent juice." 58 Fed. Reg. 2897, 2903 (Jan. 6 1993). In other words, it is the *addition of other ingredients* that make claims of "purity" misleading. Plaintiff alleges only that the use of the term "pure" is misleading because Defendants have filtered out all the pollen; and thus, she does not, and her Opposition does not suggest that she can, allege that Defendants added any ingredients to their Honey Product to make the term "pure" misleading. *See also United States v. Ten Barrels of Vinegar*, 186 F. 399, 400-01 (E.D. Wis. 1911) (overruling a demurrer because the phrase "A Blend of Pure Boiled Apple Cider and Distilled Vinegar" may be misleading to the consumer, given that consumers may understand "Pure" as merely descriptive of the words "Boiled Apple Cider," which "is far superior to distilled vinegar); *United States v. Seventy-Five Boxes of Alleged Pepper*, 198 F. 934, 936 (D.N.J. 1912) (finding the defendant's use of the term "pure pepper" misleading because "pure pepper" in the trades denotes black pepper only, but the defendant's "pure pepper" was composed of a mixture of black pepper and long pepper); *United States v. 397 Cases, etc., of Salad Oil*, 16 F. Supp. 387, 388 (D.N.J. 1936) (concluding that the label "Pure Vegetable Salad Oil" did not mislead or tend to mislead consumers into thinking they were buying pure olive oil, given that "the use of wholesome vegetable oils other than olive oil for salad purposes has become widespread").

Accordingly, we conclude that Defendants' use of the term "pure" does not, and cannot, form a separate basis for Plaintiff's claims.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 12-1148-GHK (SPx) | Date | March 20, 2013 |
| Title | *Bertha Cardona v. Target Corp., et al.* | | |

## IV. Conclusion

Based on the foregoing, we conclude that Plaintiff's false or misleading labeling claims are preempted by the NLEA.[7] Thus, Defendants' Motion is **GRANTED without leave to amend**.

**IT IS SO ORDERED.**

-- : --

Initials of Deputy Clerk Bea

[7] Because we conclude that Plaintiff's claims are preempted by the NLEA, we need not reach Defendants' other arguments for dismissal.